# REPORTS.

## ROCKINGHAM,

### JULY TERM, A. D. 1856.

BLANCHARD *v.* ATLANTIC MUTUAL FIRE INSURANCE COMPANY.

The suit upon a policy issued by a mutual fire insurance company should, in case of loss, be in the name of him who is at the time the member of the company.

If the charter of an insurance company contain a provision against double insurance, such an insurance, without the consent of the officers of the company, will make void the policy.

A by-law of an insurance company, providing for the suspension of the risk during the non-payment of assessments, is constitutional.

Where an insurance company issued a policy to G, on property of his, he giving a premium note to pay such assessments as should be made against the policy, but the insurance, in case of loss, was made payable to B — *held*, that the action should be brought in the name of G, he being the member of the company.

Where the by-law of an insurance company provided that if the insured should neglect, for the space of ten days, when personally called on, to pay any assessment, the risk on the policy should be suspended till the same should be paid, and it appeared that an assessment had been made and duly demanded, according to the terms of the by-law, but that payment had not been made — *held*, that the risk was suspended during the non-payment, and that if the property was destroyed during the suspension, the insurance could not be recovered.

ASSUMPSIT, to recover the sum of $1200, insured by policy issued by said company, dated July 29, 1850, to one Israel Gates, upon his dwelling-house, against loss or damage by fire for six years, and made payable, in case of loss, to the plaintiff.

Plea, the general issue. Upon trial it was proved that a policy was issued by the defendants, upon the application in writing of said Israel Gates, insuring to him the sum of $1200 against loss or damage by fire upon his dwelling-house for the term of six years. The policy contained the following clause : " Insurance payable in case of loss to. William Blanchard." It was also proved that the plaintiff had, at the time of the issuing of the policy and at the commencement of this suit, an insurable interest in said dwelling-house as mortgagee of Gates, and that the policy was procured and made payable to him, as aforesaid, for the purpose of giving him security for the payment of said mortgage debt. It was also proved that the house was destroyed by fire within said six years, and that due notice and preliminary proof of the loss was given to the company.

The defendants then proved that an assessment was duly made by the directors of said company, on the premium or deposit note, given by said Gates for said policy, which assessment was ordered to be paid February 4, 1851 ; that due notice of the assessment was given to Gates, and a demand of payment of the same was made upon Gates personally, by a person duly authorized by the company, in April, then next, and also in May and June following ; and that said assessment has never been paid. The fire by which the house was destroyed occurred on the 1st of August, 1852. It was also proved by the defendants, that at the time when the policy was issued by the defendants, Gates had another insurance of seven hundred and fifty dollars on said house against fire, in the Union Mutual Fire Insurance Company ; which insurance was obtained on the 23d day of July, 1850, without the knowledge of the directors or other officer of the company defendants, unless it shall be held that Horatio N. Cate, hereafter mentioned, was such officer ; and that said last mentioned insurance, in case of loss, was made payable to one Jeremiah Martin, who also held a mortgage on said house. It was also proved that the Union Insurance Company had paid to Martin the sum of five hundred and forty-eight dollars, on account of said loss under said policy, and that Gates, in his

application to the Union Company for said insurance, represented the house to be of the value of $2500.

The plaintiff then proved, by the deposition of Horatio N. Cate, that in 1850 he, Cate, was employed as insurance agent for several insurance companies, and as such he made out the applications on which said policies issued. Cate further testified that he called on Gates and solicited the job of procuring said policies, knowing he had a house, and that he, Cate, wishing to be employed in that way, called on him and asked him if he did not want insurance ; that when he first called on Gates, he, Gates, told him that he was waiting to see an agent of the defendants, for which company Cate was not an agent. That in the course of four or five weeks he called again on Gates, and did so twice before he concluded to let him, Cate, do the business ; that it was then concluded between them that two policies should be procured on the house, one in the Atlantic Company and the other in the Union Company — the former being selected by Gates and the latter by the witness, Cate : That the reason given by Gates to the witness for wishing to have two insurances was, that there were two mortgages outstanding on the house, and he wished to secure each of them by a separate policy ; that he, Cate, drew up the applications, having been acquainted with that kind of business for several years ; that Gates did not appear to be a man of experience in business of that nature ; that he, Cate, examined the house, formed an opinion of its value above the foundation, and then thought, and now thinks, that it was worth $3000 ; that he shaped the application without direction from Gates, and undertook to obtain the policies in such sums respectively as were suited to the debts they were designed to secure, and to do what was necessary for effecting the insurance properly in the two offices, and that it was so understood between him and Gates ; that he, Cate, forgot to insert in the application to the company defendant's notice of the other insurance, in order to obtain the proper consent to the double insurance ; that Gates was informed and understood that he, Cate, was an insurance agent, but he

cannot say that any thing was said on the subject of his being agent for the Atlantic Company, and that if any thing was said on that subject between them, it was that he, Cate, was not agent for that company, and that in fact he was not; that he, Cate, forwarded the applications to said companies, and when in return he received the policies, he delivered one to Blanchard and the other to Martin, and that Gates paid him therefor; that he, Cate, when he forwarded the application to the defendants, wrote and forwarded with it the following letter:

"*Reading, Mass., July* 24, 1850.

"I. L. Folsom, Esq.—Dear Sir: I ran against a man yesterday, Mr. Gates, who would be insured in your company, so I took the liberty to borrow a blank and took his application, which is herewith inclosed. Mr. Gates is now insured in your company, fourth class, for $1100. That policy he had not with him when I saw him, but says he will return it by mail, or give it to me when I give the other. I did not take any pay, for I did not know what you charge in such a case. Please send the policy to me at Reading, Massachusetts, if you issue one on this application, otherwise return the application. I am the person who made application for agency about a year ago to your company. You offered it to me on condition of getting Temple's consent. That I could not get, and so the matter dropped, and since then I have been doing business for the Union Company at Concord. I can occasionally send you an application, if you desire it.          "Yours,.          H. N. Cate."

By the first section of the act incorporating the defendants, it is provided that said corparation may make, establish and put in execution such by-laws, ordinances and regulations, not being contrary to the laws of this State, as may seem necessary or convenient for their regulation and government, and for the management of their affairs. Section third of the act provides that all persons who shall at any time become interested in said company by becoming insured therein, shall be deemed and taken to be members thereof during the terms specified in their

respective policies, and no longer, and shall at all times be concluded and bound by the provisions of said act.

Section six provides that every person insured shall, before he receives his policy, deposit his promissory note for such sum of money as shall be determined by the directors; a part, not exceeding ten per cent. of which, shall be paid immediately, and the remainder shall be payable in part or the whole at any time when the directors shall deem the same requisite for the payment of losses or other expenses.

Section seven directs that every member shall pay his proportion of all losses and expenses.

Section sixteen provides that if insurance on any house or building, or other property, shall be and subsist in said company, and in any other company, or from or by any other person or persons at the same time, the insurance made in and by this company shall be deemed and become void, unless such double insurance subsist with the consent of the directors, signified by indorsement on the back of the policy, signed by the president and secretary.

By the ninth article of the by-laws of said company, duly adopted at a legal meeting of said corporation, it is provided that if the insured shall, for the space of ten days, neglect, when personally called on, to pay any assessment, the risk of the company on the policy shall be suspended till the same is paid. A printed copy of said act and by-laws was indorsed on the policy issued to Gates by the defendants. A verdict was ordered by the court for the defendants, subject to the opinion of the Supreme Court, and it was ordered that the questions arising upon the foregoing case be reserved for the consideration of the Supreme Court — the verdict to be set aside and a new trial granted, or judgment to be rendered thereon, according to the opinion of said court.

*Hackett*, for the plaintiff.   Our positions are —

1. That the omission to give notice to the defendants of the insurance in the Union Company was an inadvertence which

originated in no wrong and occasioned no damage, and as the plaintiff was not a party to it, should not affect his claim.

2. That the defendants, having issued the policy at the instance of Cate, and upon his report of his proceedings in regard to Gates' application, they thereby adopted Cate's doings and omissions, and he became *quoad hoc* their agent, and they are not in a position, as against the plaintiff, to claim that they did not know of, and assent to, the insurance to Martin in the Union office.

3. That the plaintiff is a stranger to Martin's insurance ; the defendants having, for a valuable consideration paid by Gates, contracted to pay the plaintiff in case of loss. Blanchard's rights or remedies are in no wise affected by any irregularities or informalities between Gates and the defendants, who are, as to him, one and the same party. It is not an agreement to pay to the plaintiff what Gates might be entitled to, but a contract in case of loss to pay $1200 to Blanchard.

Nor is this a case where the plaintiff is an assignee and may have no better claim than the assignor, for here the original undertaking was upon a good consideration paid by Gates, to pay the plaintiff, who is no party to any alleged deficiencies. *Ætna Fire Ins. Co.* v. *Tyler,* 16 Wendell 396 ; *Tyler* v. *Ætna Fire Ins. Co.,* 12 ditto 507 ; *Williams* v. *Cincinnati Ins. Co.,* Wright 542 ; *Harris* v. *Ohio Ins. Co.,* ditto 544 ; 9 Wendell 404 and 474 ; 17 ditto 631 ; *Perkins* v. *N. E. Ins. Co.,* 12 Mass. 218 ; *Goodwin & a.* v. *London Assurance Co.,* 1 Burrows 489 ; *Fuller* v. *Boston M. F. Ins. Co.,* 4 Met. 206 ; *Holmes* v. *Charlestown M. F. Ins. Co.,* 10 ditto 211 ; 9 Barb. 191 ; 11 ditto 624 ; 6 Cushing 42 ; 2 Law Reporter, new series, 408.

*Wells,* for the defendants.

1. The plaintiff was not a member of this company, nor was Martin a member of the Union company. Gates was the member. He made the applications ; he gave the premium notes ; he paid the expenses ; he could discharge his mortgages

at his pleasure and deny to Blanchard or Martin any interest in the policies. *Kittredge* v. *Rock Fire Ins. Co.*, Sup. Court, December term, 1847.

2. The plaintiff has no right of action against the defendants. But if he had, he is to be held responsible for the double insurance, for his whole claim is made through the acts of Gates as his agent, and who procured the double insurance.

3. Cate was not an agent for the defendants. And if he had been, it would make no difference ; for when the parties intend there shall be double insurance, it must be by the assent of the directors on the back of the policy. See sec. 16, Charter.

In the application in this case are these words of caution : " *The Company will be bound by no statement made to the agent not contained in the application.*"

4. Gates was the party insured ; he made the application ; he gave the premium note, and the policy was to him, his heirs, executors and administrators. In his application he directed the amount to be paid to the plaintiff in case of loss. When that order came to the plaintiff's knowledge he might repudiate it, and before the knowledge reached him, or before his adoption of the act, Gates could undoubtedly countermand the order ; and his adoption should be made known to the defendants.

The defendants had no right to claim assessments of Blanchard ; he was not a member. The sixth and seventh sections of the charter determine that ; and the evidence is distinct of a non-compliance with the ninth article of the by-laws.

EASTMAN, J. The application was the foundation of the insurance. That was made by Gates. He also gave the premium note, and agreed to pay the assessments ; and the policy was issued to him upon the faith of the application.

There was no mutual contract between Blanchard and the company. He was not known to the defendants except through Gates. By the request and direction of Gates, and in consideration of the payments and undertakings made by him, the insurance was made payable, in case of loss, to Blanchard.

There was no consideration paid by Blanchard, and no engagements entered into by him ; and he was not a member of the company. Gates was the person insured ; it was with him that the contract was made, and he was the member. *Nevins* v. *The Rockingham M. F. Ins. Co.*, 5 Foster 22 ; *Rollins* v. *The Columbian M. F. Ins. Co.*, 5 Foster 205 ; *Folsom* v. *The Belknap County Ins. Co.*, 10 Foster 231.

In the first case cited it was held that if a policy, issued by a mutual fire insurance company, provides that the insurance, in case of loss, shall be paid to a third person, the action to recover the loss should be in the name of the party to the policy who gives the premium note, and thereby becomes a member of the company.

At the time this application was made to the defendants and the insurance effected, a policy had been issued to Gates on the same property by the Union office. The policy from that office was dated on the 23d day of July, 1850, and the one in suit on the 29th of the same month. The charter and by-laws of the defendants was a part of the policy. By the sixteenth section of the charter it is provided that " if insurance on any house or building, or other property, shall be and subsist in said company and in any other company, or from or by any other person or persons at the same time, the insurance made in and by this company shall be deemed and become void, unless such double insurance subsist with the consent of the directors, signified by indorsement on the back of the policy, signed by the president and secretary."

This is a very material provision ; deemed so by all insurance companies ; and, as a general thing, exists in substance in all contracts of insurance, whether made with stock or mutual companies.

By the express provisions of this sixteenth section of the charter, this policy was made void by the insurance in the Union company; and we can discover no way in which the plaintiff can be relieved from this provision. Cate was not the agent of the company, and they cannot be charged with any notice of the

double insurance through him. He did the business for Gates and as his agent. The application which formed the basis of the policy contained no notice of the insurance by the Union company, nor is there any fact disclosed from which we can infer that the defendants had any knowledge of it till after the fire.

It can make no difference, either, that the insurance was made payable to Blanchard. The policy was in fact invalid from the beginning; and whether the insurance was payable to him or to Gates, or to any other one, the liability of the company would not be changed.

But there is another ground of defence to this action, which shows that the defendants are not liable on this policy. By the first section of the act of incorporation, the company were empowered to make, establish, and put in execution such by-laws, ordinances and regulations, not being contrary to the laws of this State, as may seem necessary or convenient for their regulation and government, and for the management of their affairs. Under this section the company duly adopted, at a legal meeting, a by-law, by which it is provided that if the insured shall, for the space of ten days, neglect, when personally called on, to pay any assessment, the risk of the company on the policy shall be suspended till the same is paid.

This policy was issued on the 29th day of July, 1850, and subsequently an assessment was made against it, payable in February, 1851. Notice of the assessment was given to Gates; and in April following, and also in May and June, a personal demand was made upon him for the payment of the same; and the assessment has never been paid. This non-payment suspended the risk on the policy, and at the time of the fire the policy, according to the by-law, was inoperative. The company saw fit to adopt this by-law, probably deeming it essential in order to insure promptness in its members in the payment of assessments, so that the directors might readily meet and pay all losses. It is not an unusual by-law in mutual insurance companies; and, upon consideration, we are of opinion that it is not unconstitutional.

It was unnecessary to make any demand upon Blanchard for the payment of the assessment. The company had no claim upon him for its payment. He was not a member, and had made no contract to pay any assessments. Gates was the member. He had given his premium note, and had contracted to pay the assessments; and he was the proper person on whom to make the demand, and the proper one to pay the assessments.

No question appears to be raised by the case as to the liability of the defendants to an action by Blanchard. According to the view which we have taken of the liability of the company upon the policy, that question is unnecessary to be considered, because no recovery can be had upon the policy upon the facts stated; and the points in dispute may as well be considered in an action in the name of Blanchard as in the name of Gates. Upon the doctrine, however, of the cases before cited, the action should have been brought in the name of Gates.

We entertain no doubt of the correctness of the ruling of the court below, and there must be

*Judgment on the verdict.*